Rene L. Valladares
Federal Public Defender
Nevada State Bar No. 11479
*Alicia R. Intriago
Assistant Federal Public Defender
California State Bar No. 320102
411 E. Bonneville Ave., Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Alicia_Intriago@fd.org

*Attorney for Petitioner Robert William Downs, II

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Robert William Downs, II,

      Petitioner,

      v.

Tim Garrett, Warden of Lovelock
Correctional Center; James Dzurenda,
Director of Nevada Department of
Corrections,[1]

      Respondents.

Case No. 3:22-cv-00075-RCJ-CLB

**First Amended § 2254 Petition**

---

[1] Petitioner Downs asks that the Court substitute Respondent State of Nevada with Respondents Tim Garrett, the warden of Lovelock Correctional Center where Mr. Downs is housed, and James Dzurenda, the Director the Nevada Department of Corrections.

**PROCEDURAL HISTORY**

**I.    State Court Proceedings**

On May 29, 2013, the State charged Petitioner Robert Downs and co-defendant Allison Alamo in Reno Justice Court with various charges stemming from the alleged neglect and abuse of Allison's 7-year-old son, N.B. 05/29/2013 Complaint. The State charged Downs with one count of kidnapping in the first degree and three counts of abuse, neglect, and/or endangerment of a child resulting in substantial bodily harm and/or mental abuse. 05/29/2013 Complaint. Around this time, attorney Bruce Lindsey began representing Downs. *See* 10/11/2013 Substitution of Attorney.

On September 25, 2013, there were grand jury proceedings in the Second Judicial District Court. Tr. 09/25/2013. An indictment issued that same day charging Downs with: kidnapping in the first degree (Count I) and four counts of abuse, neglect and/or endanger a child resulting in substantial bodily harm and/or mental harm (Counts II, III, IV). 9/25/2013 Indictment.

On October 10, 2013, Theresa Ristenpart appeared on behalf of Downs. 10/10/2013 Notice of Appearance. On or about January 9, 2014, Downs entered a guilty plea to Counts II and III of the Indictment for felony child abuse. 1/09/2014 Guilty Plea Memorandum.

On April 15, 2014, at the date scheduled for sentencing, the court noted that Downs had filed a motion to withdraw his guilty plea and to withdraw his attorney. 4/15/2014 District Court Minutes. In Risterpart's motion to withdraw counsel, she noted that she had substituted into the case in October 2013, that a plea offer was on the table only until January 2014, and that she was waiting on approval for expert funding. She informed the district attorney of this over email, but the district attorney refused to give Downs and Ristenpart more time. Therefore, when Ristepart received the report from Godoy, she immediately moved to withdraw and for Downs

2

to withdraw his plea. 4/16/2014 Motion to Withdraw Defense Counsel and Appoint Conflict-Free Counsel at 2-5.

On June 6, 2014, the district court appointed Scott Edwards to represent Downs at the hearing on the motion to withdraw counsel and withdraw his guilty pleas. 6/06/2014 Notice of Appearance of Counsel. The court held a hearing on the motions on June 19, 2013, and both Downs and Ristenpart testified. 6/19/2014 District Court Minutes; 6/19/2014 Tr.

On July 23, 2014, the court granted the motion to withdraw Downs's guilty plea. 7/23/2014 Order. The following day the court denied the motion to withdraw counsel. 7/24/2014 Order. On August 14, 2014, Downs filed a renewed motion to appoint conflict-free counsel and noted that the district court had filed an ethical complaint against Ristenpart for her action on Downs's case. 8/14/2014 Motion for Leave to Withdraw as Attorney of Record. The court again appointed counsel free counsel for this hearing. 12/12/2014 Order setting oral argument.

On September 3, 2014, John Ohlson filed a notice of appearance as Downs's new court-appointed attorney to represent him at the motion to withdraw counsel. 9/03/2014 Notice of Appearance. On December 4, 2014, Ohlson moved to withdraw as counsel after realizing he had a conflict of interest. 12/04/2014 Motion to Withdraw Counsel. On December 18, 2014, the court granted Ohlson's motion. 12/18/2014 District Court Minutes. On January 6, 2015, Scott Edwards filed a notice of appearance as counsel. 1/06/2015 Notice of Appearance of Counsel.

Before trial, the State filed two motions in limine: one regarding the admissibility of character evidence of Downs's co-defendant, N.B.'s biological father, and three women who told police they had reason to think Downs's had abused N.B; and another asking the court to allow N.B. to testify via Skype from his new home in the United Kingdom. 1/16/2015 State's In Limine Motion Regarding Admissibility of

character evidence; 3/03/2015 Motion In Limine Regarding Testimony Of Child By Alternate Means.

Edwards failed to file an opposition to the motion and on March 4, 2015, the court granted the first motion regarding character evidence. 3/04/2015 Order. Edwards also failed to file a response to the motion to allow N.B. to testify via skype. *See* 3/17/2015 Tr. at 4-5 (Judge Sattler noting that no response was filed and that generally a failure to oppose means the motion will be granted, but because this motion affected Downs's confrontation clause rights, he would address the State's arguments and relevant case law). On March 17, 2015, when the court asked Edwards whether he intended to file an opposition and request to hold a hearing, Edwards stated that they did not oppose the motion and Downs confirmed. *See id*. at 5.

On March 31, 2015, Downs sought appointment of an investigator, specifically Kenneth Peele, to "contact potential witnesses and procure additional documentation for the trial." 3/31/2015 Motion for Appointment of Investigator at Public Expense.[2] At no point prior to trial did Edwards file a notice of expert witnesses or notice of witnesses, although the State did both. 3/13/2015 Notice of Expert Witnesses Pursuant to NRS 174.234; 5/20/2015 Notice of Witnesses Pursuant to NRS 174.234. On the first day of trial, during the State's opening, they alleged the following:

During the period of March 2013 through May 16, 2013, Lindsey Phillips, the manager of an apartment complex called the MacGregor Inn in Reno, observed Downs and a boy, N.B., come into her office. 6/01/2015 Jury Trial at 264-65. At that point in time, Phillips believed N.B. was being abused based upon his physical state and his demeanor and decided to call Child Protective Services, even alerting Downs that she was doing so. *Id*. at 266-267. A social worker, Ryan Boren, then arrived on scene with

---

[2] The court docket includes two notices regarding payment of fees for an investigator and an expert, but the undersigned attorney is unable to access these documents because they are sealed.

Reno police officers, and they took N.B. to the hospital, where Dr. Catherine Wagoner examined N.B. and believed N.B.'s injuries were the result of abuse or neglect. *Id*. at 268-270. On that same day, on May 16, 2013, police interview Downs and N.B.'s mother, separate from one another, at the police station. *Id*. at 270.

In its Opening Statement, the State continued recounting the alleged series of events: on May 17, 2013, Detective Harms interviewed N.B. at the police station. *Id*. at 273. N.B. detailed incidents involving Downs, including: roughhousing where Downs allegedly punched N.B., sometimes hard with a closed fist; Downs disciplining N.B., which consisted of N.B. holding cans, doing push-ups and sit-ups, taking cold showers and baths; Downs tying N.B. up by his hands and feet and carrying N.B. or making N.B. walk to the bathtub, where N.B. had a washcloth in his mouth and Downs would dunk his head under water. *Id*. at 274-75. When Detective Harms followed up with N.B. the following day, N.B. told the detective that Downs also choked him to the point that N.B. lost his vision. *Id*. at 275-76.

In its final statements to the jury during its Opening Statement, the State set forth the following evidence as the basis for the four charges against Downs:

> What evidence the State will present [for the child abuse charges] is that roughhousing, Robert Downs punching him repeatedly causing him injury, [is] one of the counts [of child abuse]. One of the counts is tying [N.B.'s] hands and feet up and actually—and gagging him and putting him under the water. And then finally one of those child abuse counts is the actual strangulation of [N.B.] by Mr. Downs.

*Id*. at 279.

During its case-in-chief, the State presented testimony from the following witnesses: Lindsay Phillips (the manager of the MacGregor Inn); Diane Crowley (a tenant at the MacGregor Inn); Detective Scott Johnson; social worker Ryan Boren; Detective Zachary Doser; Dr. Catherine Wagoner; N.B.; Detective Ashley Harms; Bonnie Kaufman (principal at California elementary school where N.B. was a second-

grader before he moved to Reno); and Andrew Bowser (a mental health counselor who counseled N.B.). *See generally* 6/1/2015 Jury Trial Transcript, 6/2/2015 Jury Trial Transcript. 6/03/2015 Jury Trial Transcript at 581-759.

In his defense, Edwards presented the testimony of Tara Godoy, a forensic nurse. 6/3/2015 Jury Trial Tr. at 751-778.

During jury deliberations, the jury sought to clarify the intent required for first-degree kidnapping. 6/04/2015 Jury Question #1. The court responded by directing the jurors to instructions No. 21 and 22. 6/04/2015 Court Response to Jury Question #1. After deliberating for approximately four hours, the jury returned guilty verdicts on all four counts. 6/04/2015 Verdicts; *see also* 6/04/2015 Trs.

On July 17, 2015, one of the jurors wrote a letter to the court informing the court that he had felt pressured into finding Downs guilty of first-degree kidnapping and asked that this be taken into consideration for sentencing. 7/20/2015 Notice of Document Received and Considered by the Court; *see also* 11/12/2015 Tr. at 4-5.

On July 21, 2015, Edwards filed a motion to withdraw from Downs's case. 7/21/2015 Motion to Withdraw as Counsel for Defendant. Richard Cornell represented Downs at the hearing on Edwards's motion to withdraw. 8/18/2015 Tr. at 3. After hearing from Edwards, the court denied the order. *Id*. at 18-19.

On November 12, 2015, the court sentenced Downs to 5 to life on the first-degree kidnapping conviction with a consecutive sentence of 96 months to 240 months for each child abuse conviction with the child abuse convictions running concurrently to one another. *See* 11/17/2015 Judgment of Conviction. Edwards withdrew from the case on November 23, 2015. 11/23/2015 Order.

## II.    Direct Appeal

Richard Cornell represented Downs on direct appeal. 12/03/2015 Notice of Appearance. On December 6, 2015, Downs filed a notice of appeal. 12/06/2015 Notice of Appeal.

On March 22, 2016, Downs filed his Opening brief, raising the following issues on appeal:

> **Claim One:** Down's Fifth, Sixth and Fourteenth Amendment rights to a fair trial and due process were impinged when the trial court committed plain error in not giving a "Mendoza" Instruction

> **Claim Two:** The evidence if insufficient under *Jackson v. Virginia*, 443 U.S. 307 (1979), to sustain a guilty verdict on Count I, first degree kidnapping

> **Claim Three:** The trial court abused its discretion and violated Downs's Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair trial when it allowed a "mental health counselor II" to opine that the child victim had PTSD and reactive attachment disorder, and was the most traumatized child he had seen in 20 years

> **Claim Four:** The trial court committed reversible error and violate Downs's Fifth, Sixth and Fourteenth Amendment rights to due process and a fair trial when it allowed a conviction of NRS 200.508(1)(a)(2) upon proof of any degree of mental harm resulting to the child, even if not substantial

> **Claim Five:** The trial court violated Downs's Fifth, Sixth, and Fourteenth Amendment rights to due process of law and to a fair trial when It allowed the interviewing detective to state prejudicial opinions that were inadmissible

> **Claim Six:** The trial court violated Downs's Fifth, Sixth, and Fourteenth Amendment rights to a fair trial, confrontation and cross-examination of witnesses and due process when it allowed the victim to testify by skype

3/22/2016 Opening Brief. The State filed an Answering Brief and Downs replied. 6/14/2016 Respondent's Answering Brief; 6/23/2016 Appellant's Reply Brief. The Nevada Supreme Court affirmed but found two errors. 6/28/2017 Order of Affirmance. The Nevada Supreme Court found that the trial court gave an erroneous jury

instruction pursuant to NRS 200.508(1) and that it was error to permit a detective to testify about the nature of the alleged victim's injuries, but it ultimately found that neither error prejudiced Downs and affirmed his convictions. *Id*. at 6-9. On July 25, 2017, remittitur issued. 7/25/2017 Remittitur.

## III.   State Post-Conviction Proceedings

On June 4, 2018, Downs filed a pro per petition for writ of habeas corpus and a motion for appointment of counsel. 6/04/2018 Petition; 6/04/2018 Motion.

In his pro petition, Downs raised the following claims:

> <u>Ground One</u>: counsel failed to interview a known witness—tenant living in MacGregor Inn unit #229—who would have provided exculpatory testimony which contradicted the weak and inconsistent testimony given by prosecution witness

> <u>Ground Two</u>: counsel failed to interview known witness—tenants living in MacGregor Inn unit #119— who would have provided exculpatory testimony which contradicted the weak and inconsistent testimony given by prosecution witness

> <u>Ground Three</u>: counsel failed to interview known witness—tenant living in MacGregor Inn unit #170— who would have provided exculpatory testimony which contradicted the weak and inconsistent testimony given by prosecution witness

> <u>Ground Four</u>: counsel failed to research and investigate a meaningful defense instead relying on prosecutor's files

> <u>Ground Five</u>: counsel failed to research and investigate a meaningful defense instead choosing to demonstrate the prosecutor's inability to prove every aspect of the charges

> <u>Ground Six</u>: counsel failed to research and investigate a meaningful defense which would have produced physical evidence supporting petitioner's claims of innocence, as exemplified by "at least one impartial medical report which fully supported the petitioner's claims made to various law enforcement officers during questioning and interrogations

and resulted in this evidence not being introduced during trial and therefore prejudicing petitioner" (cleaned up)

<u>Ground Seven</u>: counsel failed to research and investigate a meaningful defense by failing to procure expert witnesses to "properly evaluate the alleged victim due to his ADHD/RAD diagnoses as well as his various behaviors that would have supported petitioner's claims and expert testimony would have provided evidence that would have contradicted allegations of abuse" (cleaned up)

<u>Ground Eight</u>: counsel failed to research and investigate case file in order to provide an informed recommendation regarding plea offers from prosecution

<u>Ground Nine</u>: counsel failed to interview Diane Crowley who claimed to have heard unusual sounds coming from petitioner's home

<u>Ground Ten</u>: counsel failed to: investigate child's ADHD diagnosis; secure a medical expert to testify regarding the inconsistent use of Vyvanse, a medication used to treat the alleged victim's ADHD, as the side-effects mirror many of the inflicted injuries claimed by prosecution; investigate claims of neglect of victim made while living in California; request pediatric evaluations of child in order to determine alternative explanations for the physical issues that prosecution claimed were abuse, investigate the child's history of self-abuse while living in California as well as the strong possibility of this behavior increasing in frequency and severity due to acting out; investigate the alleged victim's school records where it was documented that the alleged victim would frequently come to school dirty and smelling of urine; request pharmacy experts to testify to the medications effects on the alleged victim's weight and bruising; investigate allegations made by the alleged victims' teacher regarding suspicions of the alleged victim's mother and her possible drug use.

<u>Ground Eleven</u>: counsel failed to investigate physical evidence prosecution claimed was used to bind and gag the alleged victim by failing to have these items tested for DNA

<u>Ground Twelve</u>: counsel failed to move for suppression of evidence where petitioner was in custody during the first interrogation on May 16, 2013, and was never read his *Miranda* rights

<u>Ground Thirteen</u>: counsel failed to move for suppression of evidence where petitioner informed police, prior to the start of the second interrogation on May 21, 2013,, that he had been experiencing a migraine and had taken prescription narcotic

<u>Ground Fourteen</u>: counsel failed to move for suppression of evidence where multiple photographs were used solely for the purpose of inciting the passions and emotions of the jury

<u>Ground Fifteen</u>: counsel failed to move for suppression of evidence where several items, alleged to have been used to bind and gag child, were never tested for DNA

<u>Ground Sixteen</u>: counsel failed to move for suppression of comments made by alleged witness who neither testified nor signed filed statement (Michelle Paquin, who lived in MacGregor Inn unit #221)

<u>Ground Seventeen</u>: counsel failed to file motion to impeach prejudicial and/or biased testimony of state witnesses, specifically: Diane Crowley, Lindsay Phillips, Bonnie Kaufman, Catherine Wagoner, Andrew Bowser, Detective Johnson, Detective Zachary Doser, Detective Ashley Harms

<u>Ground Eighteen</u>: counsel failed to call child's foster father to stand as a defense witness since the foster father had reported to a pediatrician that the alleged victim was "the clumsiest child he had ever seen in all the years he had been a foster-parent"

6/04/2018 Pro Per Petition at 12-28.

On June 26, 2018, the court appointed Edward Reed to represent Downs.

6/26/2018 Recommendation and Order for Appointment of Counsel. On November 26,

10

2018, counsel filed a supplemental petition for writ of habeas corpus. 11/26/2018 Supplemental Petition. It included one additional claim:

> Downs's trial and appellate counsel were ineffective because they did not argue that the kidnapping statute as applied to Mr. Downs conduct was ambiguous and did not give fair warning to Mr. Downs that this activity could be considered kidnapping, as it has never before been applied in the state of Nevada to the conduct of which Mr. Downs was convicted.

The State answered the petition and supplemental petition on January 1, 2019. 1/10/2019 Answer.

Ultimately an evidentiary hearing occurred on February 10, 2020. Before the hearing, Reed filed a memo indicating that he intended to call Richard Cornell only. 2/07/2020 Petitioner's Hearing Memorandum for Evidentiary Hearing.

At the evidentiary hearing on February 10, 2020, Reed abandoned all claims in the pro per petition. 2/10/2020 Tr. at 10. There is no indication that Reed ever engaged in any investigation of the claims in the pro per petition.

The court issued its order on March 23, 2020, denying the supplemental petition and noting that Downs had agreed to dismiss all grounds in the Petition and argue only the grounds contained in the supplemental petition. 3/23/2020 Order at 3.

On April 24, 2020, Downs filed a Notice of Appeal. 4/24/2020 Notice of Appeal. In his Opening Brief, he raised only the issue he had raised in the supplemental petition, i.e., whether the kidnapping statute was unconstitutional as applied to his case. 10/09/2020 Appellant's Opening Brief. The State filed an Answering Brief and Downs replied. 11/23/2020 Respondent's Answering Brief; 2/05/2021 Appellant's Reply Brief.

The Nevada Supreme Court affirmed the lower court's ruling. 11/10/2021 Order of Affirmance. Remittitur issues on January 7, 2022. 1/07/2022 Remittitur.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## IV.    Federal Court Proceedings

On January 27, 2022, Downs mailed his pro se petition to the Federal District Court for Nevada. On May 12, 2022, the Court appointed the Federal Public Defender of Nevada to represent Downs. ECF No. 6. The undersigned attorney filed her notice of appearance on June 10, 2022. ECF No. 10.

This amended petition now follows.

### STATEMENT REGARDING 28 U.S.C. §2254(D)

For each claim in this petition, Downs alleges any rulings from the Nevada appellate courts denying him relief on the merits are (or would be) (1) contrary to, and/or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and or (2) are (or would be) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Downs also asserts for the purposes of further review that the standard of review in 28 U.S.C. 2254(d) violates the U.S. Constitution, specifically the Suspension Clause (Article One, Section Nine, clause two); fundamental principles of separation of powers (Articles One, Two, Three); the ban on cruel and unusual punishments (Amendments Eight and Fourteen); and the guarantee of due process (Amendments Five and Fourteen). *But see Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007) (rejecting some of these arguments).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

GROUNDS FOR RELIEF

**Ground One: The State failed to prove the first-degree kidnapping charge beyond a reasonable doubt because there was insufficient evidence to convict Downs of first-degree kidnapping; Downs's conviction violates his constitutional right to due process as guaranteed by the Fifth and Fourteenth Amendment rights to the United States Constitution.**

Statement of Exhaustion:

Downs raised this claim on direct appeal and the Nevada Supreme Court addressed it. 3/22/2016 Opening Brief; 6/14/2016 Answering Brief; 6/23/2016 Reply Brief; 6/28/2017 Order of Affirmance; 7/25/2017 Remittitur.

Statement of Facts in Support of Claim:

Downs challenges the sufficiency of the evidence to sustain his first-degree kidnapping conviction. The test of sufficiency of the evidence is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is such that a reasonable finder of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307,319 (1979). At trial, the State is required to prove each and "every element of a crime," as well as "every fact necessary to prove the crime" beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000); *In re Winship*, 397 U.S. 358,364 (1970).

Under NRS 200.310(a), a person who "leads, takes, entices, or carries away or detains any minor . . . with the intent to . . . perpetrate upon the person of the minor any unlawful act is guilty of kidnapping in the first degree." According to the Indictment, Downs "did willfully an unlawfully seize, confine, conceal, kidnap and/or carry away, the person of N.B., a minor child seven years of age, and did hold or detain N.B. for the purpose of inflicting substantial bodily harm upon his person and/or did take, carry away and/or detain him with the intent to perpetrate upon him an unlawful act." 9/25/2013 Indictment at 1-2 (cleaned up).

13

During jury deliberations, about four hours after the jury had begun deliberating, a juror sent a question which read, "If someone commits an unlawful act, is there then any intention or intent to perpetrate an unlawful act?" 6/4/2015 Tr. at 899. In response, the court direct the jury to Intsructions No. 21 and 22. Id. at 905. Less than an hour later, the jury returned with guilty convictions on all charges, including the first-degree kidnapping conviction. *See* 6/4/2015 Tr. at 899, 907-908; 6/04/2015 Verdicts.

The following month, in July 2015, a juror wrote and sent a letter to the court regarding his reluctance to find Downs's guilty of first-degree kidnapping and the pressure he felt to return a guilty verdict on this count. 7/20/2015 Notice of Document Received and Considered by the Court. The juror's extreme discomfort and pressure to find Downs's guilty of this offense despite the insufficiency of the evidence demonstrates prejudice because the insufficient evidence had a substantial and injurious effect on the jury's verdict.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

**Ground Two: Counsel was ineffective for failing to challenge the sufficiency of the evidence on the first-degree kidnapping charge, in violation of Downs's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments.**

Statement of Exhaustion:

This claim is unexhausted, but a version of this claim was raised on direct appeal and decided by the Nevada Supreme Court in its Order of Affirmance. 3/22/2016 Opening Brief; 6/14/2016 Answering Brief; 6/23/2016 Reply Brief; 6/28/2017 Order of Affirmance; 7/25/2017 Remittitur.

1

Relevant legal standard for all ineffective assistance of counsel claims[3]:

2

"The question of whether a defendant has received ineffective assistance of

3

counsel at trial in violation of the Sixth Amendment is a mixed question of law and

4

fact and is thus subject to independent review." *Strickland v Washington*, 466 U.S.

5

668, 668 (1984). Under this two-prong test, a defendant who challenges the adequacy

6

of his or her counsel's representation must show (1) that counsel's performance was

7

deficient, and (2) that the defendant was prejudiced by this deficiency. *Id.* at 687.

8

Statement of Facts in Support of Claim:

9

Downs incorporates the facts and legal standards set forth in Ground One into

10

this claim as well as Ground Three.

11

Counsel was ineffective for failing to challenge the sufficiency of the State's

12

evidence as to first-degree kidnapping. The State's theory of the case was that the

13

physical restraint and movement of N.B. was part the child abuse inflicted upon

14

N.B.—the State argued in its opening statement that Downs tying N.B. up by his

15

hands and feet and carrying N.B. or making N.B. walk to the bathtub, where N.B.

16

had a washcloth in his mouth and Downs would dunk his head under water, was child

17

abuse. 6/01/2015 at 274-75. At no point did Edwards challenge the sufficiency of the

18

evidence as to the first-degree kidnapping charge. There was no strategic reason for

19

Edwards not to  challenge the sufficiency of the evidence, and it was objectively

20

unreasonable. But for Edwards's failure to do so, there is a reasonable probability the

21

outcome of Downs's underlying criminal proceedings would have been different.

22

Any contrary ruling by a state court was contrary to, or involved an

23

unreasonable application of, clearly established federal law, and/or involved an

24

25

26

27

[3] Downs incorporates this legal standard in all subsequent grounds alleging ineffective assistance of counsel.

15

unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

**Ground Three: Counsel was ineffective for failing to ask the trial court for a jury instruction informing the jury that to convict Downs of both first-degree kidnapping and child abuse, the State had to show that the movement of the child required for the kidnapping charge was not incidental to the related child abuse charge, in violation of Down's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments.**

Statement of Exhaustion:

This claim is unexhausted, but a version of this claim was raised on direct appeal and decided by the Nevada Supreme Court in its Order of Affirmance. 3/22/2016 Opening Brief; 6/14/2016 Answering Brief; 6/23/2016 Reply Brief; 6/28/2017 Order of Affirmance; 7/25/2017 Remittitur.

Statement of Facts in Support of Claim:

Under Nevada law, when a person is charged with kidnapping and a separate associated offense, an additional instruction is required to distinguish that the factual basis for the kidnapping is independent of the associated offense. *Garcia v. State*, 121 Nev. 327, 330 334-35, 113 P.3d 836, 838, 841 (Nev. 2005). This is commonly called a *Mendoza* instruction based upon a case of the same name. In that case the Nevada Supreme Court suggested that a jury be instructed that, to find a defendant guilty of both kidnapping and an associated offense, it must find beyond a reasonable doubt that any movement of the victim was not incidental to the associated offense, that any incidental movement of the victim substantially increased the risk of harm to the victim over and above that necessarily present in the associate offense, that any incidental movement of the victim substantially exceeded that required to complete the incidental offense, that the victim was physically restrained and such restraints substantially increased the risk of harm to the victim, or the movement or restraint

had an independent purpose or significance. *Mendoza v. State*, 122 Nev. 267, 275-76, 130 P.3d 176, 181 (Nev. 2006).

Here, Edwards never sought to have this instruction read to the jury, which would have made clear that the State had to establish beyond a reasonable doubt the factual basis for the kidnapping charge was not incidental to the factual basis for the child abuse charge. There was no strategic reason not to request this instruction, and it was objectively unreasonable for Edwards not to ask for it. But for Edwards's omission, there is a reasonable probability that the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

**Ground Four: Counsel was ineffective for failing to object to erroneous instructions on child abuse, in violation of Down's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments.**

Statement of Exhaustion:

This claim is unexhausted, but a version of this claim was raised on direct appeal and decided by the Nevada Supreme Court in its Order of Affirmance. 3/22/2016 Opening Brief; 6/14/2016 Answering Brief; 6/23/2016 Reply Brief; 6/28/2017 Order of Affirmance; 7/25/2017 Remittitur.

Statement of Facts in Support of Claim:

Under NRS 200.508(1)(a)(2), the crime of child abuse resulting in substantial bodily harm and/or mental harm requires the jury to find that either the child suffered substantial mental harm or substantial bodily harm. In Jury Instruction No. 24, the jury was advised it needed to find only mental harm, not substantial mental harm, to find Downs guilty of child abuse. The Nevada Supreme Court found that this failure to include the modifier "substantial" was error; therefore, counsel was

ineffective for failing to ensure that the instruction included this modifier. *See* 6/28/2017 Order of Affirmance at 6-7. This error prejudiced Downs. But for counsel's error, there is a reasonable probability the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

**Ground Five: Counsel was ineffective for failing to object to Detective Doser's testimony commenting on Downs's credibility and also expressing quasi-medical opinions about the causes of N.B.'s injuries, in violation of Down's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments.**

Statement of Exhaustion:

This claim is unexhausted, but a version of this claim was raised on direct appeal and decided by the Nevada Supreme Court in its Order of Affirmance. 3/22/2016 Opening Brief; 6/14/2016 Answering Brief; 6/23/2016 Reply Brief; 6/28/2017 Order of Affirmance; 7/25/2017 Remittitur.

Statement of Facts in Support of Claim:

Counsel was ineffective for failing to object to Detective Doser's testimony about Downs's credibility and the cause of N.B.'s injuries. Doser testified that N.B. lost his vision because of pressure put on his carotid arteries and that the hemorrhaging in N.B.'s eyes was caused by a lack of oxygen from attempted drowning. 6/02/2015 Jury Trial Tr. at 460, 511. The Nevada Supreme Court found that allowing this testimony was error as it amounted to an expert opinion. *See* 6/28/2017 Order of Affirmance at 8-9.

Counsel's failure to object to this testimony was objectively unreasonable; but for this error, there is a reasonable probability that the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

**Ground Six: Trial counsel was ineffective for permitting the child to testify via Skype and for failing to effectively cross examine the child in violation of Downs's confrontation right and right to effective assistance of counsel under the Sixth and Fourteenth Amendments.**

<u>Statement of Exhaustion</u>:

This claim is unexhausted, but a version of this claim was raised on direct appeal and decided by the Nevada Supreme Court in its Order of Affirmance. 3/22/2016 Opening Brief; 6/14/2016 Answering Brief; 6/23/2016 Reply Brief; 6/28/2017 Order of Affirmance; 7/25/2017 Remittitur.

<u>Statement of Facts in Support of Claim</u>:

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. This is because "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Therefore, the admission of out-of-court hearsay statements is prohibited unless the witness is unavailable and was subject to a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required:

unavailability and a prior opportunity for cross-examination"); *see also Bruton v. U.S.*, 391 U.S. 123 (1968).

As noted above, the State sought to have N.B. testify via Skype from the United Kingdom, and Edwards did not object.

During the portion of the trial in which N.B. testified, there were repeated issues with the technology through which the State and defense counsel questioned N.B. For example, N.B. indicated that the prosecutor had frozen during the direct examination and re-direct examination. 6/03/2015 Jury Trial Tr. at 619-648. Edwards's cross-examination of N.B. was also curtailed because of the connection issues. See id. at 647. During the cross-examination, N.B. also told the court that his father and stepmother were also in the room while he testified. Id. at 642. Much of Edwards cross-examination of N.B. was irrelevant—he asked N.B. if he played sports, what kinds of toys he liked, if he had legos, Edwards asked about N.B. living with his grandparents in Reno and what he liked to eat there. See generally id. at 643-647.

When the connection completely vanished during the State's re-direct of N.B., the court enquired if Edwards wanted to further question N.B., to which he replied "no." 6/03/2015 Jury Trial Tr. at 649-650.

Edwards didn't question N.B. about his testimony on direct examination that he could not recall if Robert ever punched him, which was the factual basis for one of the child abuse charges. *Id.* at 639. Thus, the only factual basis for that claim came through the testimony of other individuals, who relayed to jurors what N.B. had previously told them, which was ostensibly hearsay as it was offered as proof that Downs had in fact punched N.B. in his body at some previous point in time. *See, e.g.,* 6/03/2015 Jury Trial Tr. at 691-93 (testimony from Detective Harms that N.B. had told him that Downs punched him with a closed fist).

Edwards's wholesale failure to object to N.B.'s testimony via skype or to ensure that Downs had a meaningful opportunity to confront his accusers was objectively

unreasonable. There was no strategic reason not to ensure that Downs had a meaningful opportunity to undermine the factual allegations related to the various child abuse charges and more specifically the charge that he had committed the crime of child abuse by punching N.B. with a closed fist on his body. But for Edwards's failure to oppose N.B.'s testimony via skype and to effectively cross-examine N.B. or object to testimonial statements N.B. made to Detective Harms, there is a reasonable probability the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

**Ground Seven: Counsel Edwards was ineffective both before and during trial, in violation of Downs's Sixth and Fourteenth Amendment rights to the effective assistance of counsel**.

Statement of Exhaustion:

These claims are unexhausted. All of these claims were raised in Mr. Downs pro per state post-conviction petition. See 6/04/2018 Pro Per Petition for Writ of Habeas Corpus (Post-Conviction). However, these court-appointed attorney Edward Reed abandoned these claims at the post-conviction evidentiary hearing. See 2/10/2020 Tr. at 10. At this juncture, these claims are technically exhausted because if Downs were to return to state court to present these claims, the Nevada state courts would likely find that the claims are procedurally defaulted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

<u>Statement of Facts in Support of Claim</u>

### A. Failure to file a motion in limine or object to State's use of certain photographs

At trial, photographs of N.B.'s injuries were introduced to jurors, which had been taken on or about May 16, 2013. See State's Trial Exhibits at 15-42. The State also presented a photograph of N.B. before he moved to Reno to contrast his physical states. State's Trial Exhibit 43.

Edwards did not object to the introduction of these photographs at trial nor did he file a motion in limine prior to trial to exclude these images. The prejudicial effect of the images outweighed their relevance, as Dr. Wagoner testified about the injuries she observed on N.B. and Bowser testified about the perceived emotional impact these injuries had on N.B. In fact, Edwards did not file any motions in limine or even oppose the State's motions in limine.

The failure to file a motion in limine was objectively unreasonable. But for Edwards's failure to file this motion, there is a reasonable probability that the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

### B. Failed to interview and call certain witnesses for trial

Upon information and belief, counsel for Downs failed to interview tenants who resided in MacGregor Units #229, #119, and #170 during the relevant time period. Had counsel done so, upon information and belief they would have discovered:

-the tenant residing in unit #229 did not hear anything unusual coming from Downs's apartment despite this tenant working from home;

-the first tenant residing in unit #119 reported to Detective Scott Johnson that he would occasionally hear a thump coming from Downs's apartment but never stated that he heard sounds akin to an animal or child being tortured, and the second tenant residing in #119 said the same;

-the tenant residing in unit #170 told Detective Scott Johnson that he had known Downs for 15 years and would have corroborated that N.B. self-abused, had extremely adverse reactions to bathing, was clumsy, had delusions, and would urinate on himself when fixating (as a result of N.B.'s ADHD)

-N.B.'s foster father who would have testified that N.B. was clumsy and that certain items in the foster home were removed due to this tendency

Upon information and belief, counsel's failure to interview and/or present these witnesses at trial prejudiced Downs; but for counsel's failures there is a reasonable probability that the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

## C.   Failure to retain specific experts

Upon information and belief, or about April 14, 2014, Downs's second attorney (Ristenpart) received two expert reports, including one from Tara Godoy. In Tara Godoy's report, after reviewing some of N.B.'s medical records and the police reports, Ms. Godoy found that N.B.'s injuries could have been caused by other things. Edwards ended up calling Ms. Godoy at trial to testify about the possibility that N.B.'s injuries were attributable to normal child activities.

But Edwards failed to retain any expert who could testify about attention deficit and hyperactivity disorder in children N.B.'s age, and how it would explain

certain behaviors of N.B., like losing track of time and urinating on himself or being hyperactive and incurring more bruising than the average child. At the time of these incidents in Reno, upon information and belief, N.B. was without his prescription medication for ADHD, meaning the symptoms of his disorder would have been particularly acute. This combined with Alamo's neglect of N.B.—i.e., her failure to provide him with appropriate care for a special needs child—would have altered the narrative of the proceedings. There was not strategic reason not to present testimony from this type of expert and to introduce reasonable doubt as to whether the factual predicates for some or all of the charges against Downs amounted to actual abuse. But for Edwards's failure to retain this type of expert and present testimony from that expert, there is a reasonable probability that the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

### D. Failure to test items purportedly for victim's DNA

Upon information and belief, N.B. was swabbed for DNA, but at no point did police test the materials purportedly used to bind and gag N.B. for his DNA. Edwards was ineffective for failing to have these materials tested, which upon information and belief would have shown that N.B.'s DNA was not on the materials. It was objectively unreasonable for Edwards not to obtain and test these materials. But for this failure, there is a reasonable probability the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an

1    unreasonable determination of the facts adduced in the state court record. See 28

2    U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

> **E.    Failure to investigate and present a defense that co-defendant Alamo was responsible for N.B.'s injuries and that Downs's alleged conduct did not amount to abuse under the relevant law**

Edwards failed to investigate or seek information relating to N.B.'s behavioral problems, his distaste for bathing as upon information and belief N.B. came to school smelling of urine and dirty, and co-defendant Alamo's seeming neglect of N.B. in California before he relocated with her to Reno. Edwards could have used this information to show that any bruising N.B. may have incurred from roughhousing with Downs was attributable to neglect by Alamo. In other words, to the extent that N.B. previously stated Downs punched him while roughhousing, this evidence could have been used to show that this was typical roughhousing and that Alamo's neglect of N.B. caused him to easily bruise and appear weak.

There was no strategic reason for counsel not to seek this information and to present this as a theory of defense to the child abuse charge based upon Downs punching N.B. and causing him substantial mental harm or bodily harm. But for Edwards's failure to seek out and present this information, there is a reasonable probability the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

25

**Ground Eight: Counsel was ineffective during plea negotiations, in violation of Downs's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments.**

Statement of Exhaustion:

This claim is unexhausted. Downs raised this claim or a version of it in his pro per state post-conviction petition. *See* 6/04/2018 Pro Per Petition for Writ of Habeas Corpus (Post-Conviction). However, the court-appointed attorney Edward Reed abandoned the claim at the post-conviction evidentiary hearing. See 2/10/2020 Tr. at 10. At this juncture, this claim is technically exhausted because if Downs were to return to state court to present the claim, the Nevada state courts would likely find that the claim is procedurally defaulted.

Statement of Facts in Support of Claim:

The Sixth Amendment requires trial counsel to provide "effective assistance of counsel at critical stages of the criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 164 (2002). The right to the effect assistance of counsel extends to the plea-bargaining process, *id*. at 163, and a defendant has the right to make a reaonably informed decision whether to accept a plea offer. *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). A defendant's knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty. *United States v. Day*, 969 F.2d 39, 43 (3d. Cir. 1992).

To establish ineffective assistance of counsel where a defendant rejects a plea agreement and proceeds to trial, a habeas petitioner must show that trial counsel's performance fell below an objectivley reasonable standard and that the petitioner suffered prejudice as a result. *Lafler*, 566 U.S. at 174; *see also Strickland*, 466 U.S. at 687-88. To satisfy the prejudice prong of this test, a petitioner must show that "there is a reasonale probabilty that he and the trial court would have accepted the guilty plea," and that "as a result of not accepting the plea and being convicted at trial," the

petitioner received a sentence much greater than he would have received had he accepted the plea. *Lafler*, 566 U.S. at 174.

Downs took a plea offer upon the advice of his second attorney (Ristenpart), and then moved to withdraw that offer once counsel received a report from Tara Godoy that suggested some of N.B.'s injuries could have been attributable to normal childhood activities. Downs was advised by Ristenpart to accept the plea offer without having completed the investigation of the case. Once Ristenpart obtained the report, she advised Downs to withdraw his plea. Counsel's failures to fully investigate the charges before advising Downs to plead and then to advise him to withdraw his guilty plea based upon Ms. Godoy's report was patently ineffective. Given the nature of the charges against Downs and N.B.'s statements to police, the expert report of Ms. Godoy provided a possible defense to some of the child abuse charges, which she testified about during the trial, but that report did nothing to undermine N.B.'s statements that at some point during the two months he lived with Downs  that Downs had bound his hands and legs and then carried him to the bathroom to submerge him in water. Because that was the factual basis for the kidnapping charge, and a conviction on first-degree kidnapping can result in a life sentence, it was patently ineffective for Ristenpart to advise her client to plead guilty and to then withdraw his plea based upon the report of Ms. Godoy. But for counsel's actions, Downs would have not sought to withdraw his original plea and would not have gone to trial.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

**Ground Nine: Counsel rendered ineffective assistance by failing to move to suppress statements that Downs made to Detective Doser and/or object to admitting the video recordings of this questioning at trial and playing the entire videos for the jury**

Statement of Exhaustion:

This claim is unexhausted. Downs raised these claims or a version of them in his pro per state post-conviction petition. *See* 6/04/2018 Pro Per Petition for Writ of Habeas Corpus (Post-Conviction). However, the court-appointed attorney Edward Reed, abandoned the claim at the post-conviction evidentiary hearing. See 2/10/2020 Tr. at 10. At this juncture, the claims are technically exhausted because if Downs were to return to state court to present the claim, the Nevada state courts would likely find that the claim is procedurally defaulted.

Statement of Facts in Support of Claim:

Counsel's failure to file a suppression motion may be constitutionally ineffective where the record clearly shows that an attorney's failure to file a suppression motion is not due to trial strategy considerations but due to his failure to conduct any pretrial discovery. *Kimmelman v. Morrison*, 477 U.S. 365, 367 (1986).

Counsel was ineffective for failing to move to exclude the custodial interrogations of Downs on May 16 and May 21, 2013, and to exclude all inculpatory statements Downs made during those interviews (specifically that he may have had black outs where he inflicted injuries on N.B.), the latter of which ultimately came in through the testimony of Detective Doser. *See* 6/02/2015 Jury Trial Tr. at 443-455. Counsel was also ineffective for failing to object to the State playing the entire video recordings of each interview during trial.

On May 16, 2013, Detective Doser of the Reno Police Department interviewed Downs at the police station. State's Trial Exhibit 47. Doser testified that initially Downs was not a suspect, but Doser became increasingly suspicious of Downs during the interview. 6/02/2015 Jury Trial Transcript at 424. Yet, given the circumstances

of the incident, it is likely Downs was a suspect at the time he spoke with police on May 16, 2013. As an employee of the MacGregor Inn testified, after Ms. Alamo and N.B. moved in with Downs in March 2013, she began receiving nose complaints about what the tenant believed was an animal being abused in Mr. Downs apartment, but Ms. Phillips knew that Mr. Downs did not own a pet. 6/01/2015 Trial Transcript at 303-304. That tenant complained to Ms. Phillips several times about banging, yelling and screaming. *Id.* at 305. Then the tenant next to Downs complained to ms. Phillips about yelling and crying. *Id.* at 307. Ms. Phillips had also seen N.B. a few times, and on May 16, 2013, Downs came with N.B. to the motel office. *Id.* at 309-310. On May 21, 2013, again Detective Doser interviewed Downs. At the start of the interview, he told Downs that he was not under arrest and was free to leave. Yet, Doser had spoken to N.B and had engaged in another search of the apartment. State's Trial Exhibit 48. Given the totality of the circumstances of both interviews, Downs was not free to leave and he should have immediately been given a Miranda warning by Detective Doser.

During trial, this interview was admitted into evidence for the jurors to watch, which was unusual. Edwards did not object to playing the entire videos, which were roughly an hour long. 6/02/2015 Jury Trial Tr. at 453, 481.

Counsel was ineffective for failing to move to suppress Downs's inculpatory statements made during the interviews and for failing to object to these videos being published to the jury during trial. But for these failures, there is a reasonable probability that the outcome of Downs's underlying criminal proceedings would have been different.

Any contrary ruling by a state court was contrary to, or involved an unreasonable application of, clearly established federal law, and/or involved an unreasonable determination of the facts adduced in the state court record. *See* 28 U.S.C. §§ 2254(d)(1) and (d)(2). Downs is entitled to relief.

### PRAYER FOR RELIEF

Accordingly, Robert Downs II respectfully requests that this Court:

1.    Issue a writ of habeas corpus to have Robert Downs II brought before the Court so that he may be discharged from his unconstitutional confinement;

2.    Conduct an evidentiary hearing at which proof may be offered concerning the allegations in this amended petition and any defenses that may be raised by respondents; and

3.    Grant such other and further relief as, in the interests of justice, may be appropriate.

Dated December 29, 2023.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Alicia R. Intriago*

Alicia R. Intriago
Assistant Federal Public Defender

**DECLARATION UNDER PENALTY OF PERJURY**

I declare under penalty of perjury under the laws of the United States of America and the State of Nevada that the facts alleged in this petition are true and correct to the best of counsel's knowledge, information, and belief.

Dated December 29, 2023.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Alicia R. Intriago*

Alicia R. Intriago
Assistant Federal Public Defender